**Crystal SCROGGINS, Plaintiff,**

v.

**LTD, INC. t/a Lustine Toyota Dodge, Defendant.**

**No. 02–1786–A.**

United States District Court, E.D. Virginia, Alexandria Division.

March 17, 2003.

Alexander Hugo Blankingship, III, Blankingship & Associates P.C., Alexandria, VA, for Plaintiff.

Michael Gary Charapp, Charapp Deese & Weiss L.L.P., Washington, DC, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this Truth in Lending Act[1] ("TILA") claim, the question presented on a threshold dismissal motion is whether a car dealer violates TILA by declining to provide the financing promised in the retail installment sales contract ("RISC") or by failing to pay a license and registration fee listed in the RISC.

### I.[2]

On November 16, 2001, plaintiff, Crystal Scroggins, agreed to trade in her old car towards the purchase of a 2002 Toyota RAV 4 from defendant, Lustine Toyota Dodge ("Lustine"). At that time, Scroggins was advised by the Lustine representative that if she traded in her old car and made a $1000 down payment, Lustine would finance the remaining $22,104.74. In the representative's words, the financ-

---

1. 15 U.S.C. § 1601 *et seq.*

2. The facts recited here are derived from the complaint, and are assumed to be true solely for purposes of resolving the motion to dismiss. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Estate Constr. Co. v. Miller & Smith Holding Co.,* 14 F.3d 213, 217–18 (4th Cir.1994).

ing, given the trade-in and the $1000 payment, was "a done deal." Scroggins then signed a Buyer's Order and RISC, and gave Lustine a post-dated check for $1000. Lustine, in turn, provided Scroggins with a temporary certificate of ownership and allowed her to drive the car away.

On December 6, 2001, Scroggins returned to Lustine to pay $1,000 in cash in lieu of the $1,000 post-dated check she had given Lustine on November 16, 2001. On this occasion in December, a Lustine representative asked Scroggins to sign a second set of documents, *i.e.* another Buyer's Order, dated November 16, 2001, and another RISC, dated December 6, 2001. Other than the different date on the second RISC, this second set of documents was identical to the first in all respects. Significantly, both Buyer's Orders included the following provision applicable to "sales involving dealer arranged financing only:"

> This sale is conditioned upon approval of your proposed retail installment sale contract as submitted to or through the dealer. If that proposed retail installment sale contract is not approved under the terms agreed to with the dealer, you may cancel this sale and any down payment and/or trade-in you submitted will be returned to you, provided that any vehicle delivered to you by the dealer pursuant to this agreement is returned to the dealer in the same condition as delivered to you, normal wear and tear excepted, within twenty-four hours of written or oral notice to you of the credit denial.

Although the Lustine representative gave no reason for the need to sign a second set of documents, Scroggins willingly did so.

The second RISC Scroggins signed included, as did the first, a charge of $38.50 for "government license and/or registration fees." Scroggins alleges that Lustine never paid these fees to the Virginia Department of Motor Vehicles ("DMV"). Instead, Lustine issued Scroggins three consecutive sets of thirty-day temporary license plates. The first set of temporary licence plates expired in mid-December 2001. When Scroggins returned these plates to Lustine in mid-December, she was given a second set of temporary license plates. For this second set of license plates, Lustine noted on the applicable form that the car had been sold to Scroggins on December 14, 2001. When the second set of temporary license plates expired at the end of January, Lustine then issued Scroggins a third set of temporary license plates. On the form related to these license plates, Lustine noted that the car had been sold to Scroggins on January 23, 2002.

Ultimately, almost three months after Scroggins' initial agreement in November to buy the car, Lustine advised Scroggins that Lustine would not provide the financing for her purchase of the car. Instead, according to Scroggins, Lustine demanded that she return the car, which she did. Yet, when Scroggins demanded that Lustine return her trade-in car, Lustine informed her that it had already been sold at an auto auction.

On December 6, 2002, Scroggins filed her seven-count complaint.[3] Relevant here is Count I, which alleges a TILA

---

**3.** Count II alleges a Fair Credit Reporting Act ("FCRA") violation; Count III alleges a violation of § 59.1–200A(8) of the Virginia Consumer Protection Act ("VCPA"), which prohibits the advertising of goods with no intention of selling them at the advertised price; Count IV alleges a violation of § 59.1– 200A(14) of the VCPA, which prohibits the use of deception, fraud or misrepresentation in connection with a consumer transaction; Count V alleges a breach of contract; Count VI alleges conversion; and Count VII alleges fraud.

violation. In this count, Scroggins contends that Lustine violated TILA because the credit terms disclosed in the proposed RISC were inaccurate given that the stated financing was never provided. Put differently, Scroggins alleges that the $22,104.74 stated on the RISC as the amount financed is inaccurate, as the actual amount financed was zero. Scroggins also claims that Lustine's failure to pay the $38.50 DMV fee that it collected from her constitutes à TILA violation. Lustine seeks dismissal of this claim pursuant to Rule 12(b)(6), Fed.R.Civ.P. on the ground that the failure to provide financing does not give rise to a TILA claim.

## II.

■ TILA's goal is to "assure a meaningful disclosure· of credit terms," to "promote the informed use of credit," and to "protect the consumer against inaccurate and unfair billing... practices." 15 U.S.C. § 1601(a). To that end, TILA requires that the RISC provide accurate disclosures of credit terms to consumers, and that these disclosures must be given "before credit is extended," or "before consummation of the transaction." 15 U.S.C.

§ 1638(b)(1); 12 C.F.R. § 226.17. Regulation Z, promulgated by the Federal Reserve pursuant to TILA, defines consummation as the time a "consumer becomes contractually obligated on a credit transaction." 15 U.S.C. § 1638(c); 12 C.F.R. § 226.2(a)(13). Thus, "TILA liability... cannot accrue *until* a credit transaction is consummated." *See Nigh v. Koons Buick Pontiac GMC, Inc.,* 319 F.3d 119, 123–24 (4th Cir.2003) (citing *Baxter v. Sparks Oldsmobile, Inc.,* 579 F.2d 863, 864 (4th Cir.1978) (emphasis in the original)).

■ Given this important principle, the first step in the analysis of a TILA claim is typically to ascertain whether the credit transaction in issue was consummated. In the instant case, this requires determining the effect of the conditional sales provision found in the Buyer's Order. This provision, according to Lustine, made the deal conditional on Lustine's approval of the financing, which never occurred and hence the deal was never consummated. Scroggins counters by alleging that she was advised the contrary, namely that approval of the financing was "a done deal." Because this is essentially a factual dispute[4]

---

**4.** There is also a legal aspect to the question of the effect of the Buyer's Order provision. The provision may be construed to be a condition precedent, which the Fourth Circuit has held must be fulfilled for the transaction to be consummated. *See Baxter,* 579 F.2d at 864 (holding that no TILA liability can occur where the failure of a condition precedent prevents consummation of the transaction). Under this interpretation, the existence of the unfulfilled condition precedent means that "further action was necessary to consummate the extension of credit," and TILA "does not impose penalty until credit is in fact extended." *Id.See also Najieb v. Chrysler–Plymouth,* 2002 WL 31906466 (N.D.Ill.2002) (holding that when the condition precedent has not yet been satisfied, there was no binding obligation formed, and accordingly no TILA liability attached).

However, an unfulfilled condition does not necessarily mean that the transaction was not

consummated. The Fourth Circuit has recently held that consummation "can encompass unfunded financing agreements." *See Nigh,* 319 F.3d 119, 123–24 (citations omitted). In *Nigh,* the car purchaser signed a Sales Order, but the dealer did not countersign that document, intending only to sign once the dealer secured a lender for the Sales Order. The Fourth Circuit held that because the dealer had the unilateral right to execute the contract, thereby obligating the purchaser at the dealer's "sole discretion," TILA liability attached when the purchaser was committed to the sale. *Id.,* 319 F.3d 119, 124–25. It is arguable under *Nigh* that even though Lustine declined to provide the financing, Scroggins became committed to the sale when she signed the Buyer's Order, and hence the transaction was consummated at that time and Lustine therefore subject to TILA liability.

that cannot be resolved at the threshold dismissal stage, the analysis proceeds here assuming the transaction was consummated. Given this assumption, the next step in the analysis is to measure what Scroggins alleges against what TILA requires to establish a violation.

■ TILA requires that the disclosures be accurate at the time of consummation; thus, whether the disclosures were accurate must be measured as of that time. *See Nash v. First Financial Savings and Loan Association,* 703 F.2d 233, 239 (7th Cir.1983); *Leguillou v. Lynch Ford, Inc.,* 2000 WL 198796, *3–4 (N.D.Ill.2000). Specifically, TILA provides that

> if information disclosed in accordance with...[TILA] is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of ...[TILA].

15 U.S.C. § 1634. Thus, it is clear that the complaint fails to state a valid TILA claim unless it alleges that the required RISC disclosures were inaccurate as of the date of consummation of the transaction.

Scroggins' complaint fails to meet this standard. She does not allege or contend that the TILA disclosure regarding the amount financed was inaccurate at the time it was made. Instead, she alleges that subsequent events, *i.e.* Lustine's failure to extend credit on the terms agreed to in the RISC, rendered the disclosures inaccurate. Because this inaccuracy was caused by a subsequent event, it "does not constitute a violation of [TILA]." *See* 15 U.S.C. § 1634. To conclude otherwise would impermissibly read into TILA a

breach of contract remedy the statute does not contain.

■ This reasoning is also dispositive of Scroggins' claim that Lustine violated TILA when it failed to pay the $38.50 DMV fee collected from her. At the time the disclosure was made, the $38.50 fee was an accurate statement of the amount to be paid to the DMV. Scroggins relies on a subsequent event, *i.e.* Lustine's failure to pay that fee to the DMV, to establish the disclosure's inaccuracy. This subsequently occurring "inaccuracy," by definition, is not a violation of TILA. *See id.* Accordingly, for these reasons, Scroggins' TILA claim must be dismissed.[5]

■ This result is consistent with existing authority. Particularly apposite is the *Leguillou* case, which involved facts essentially similar to the instant case. There, the contract permitted either side to cancel the transaction if the dealer failed to obtain financing on the stated terms. When the dealer could not obtain financing at the annual rate of interest specified in the contract, and the purchaser did not agree to financing on different terms, the dealer demanded that the purchaser return the car. Thereafter, the purchaser sued the dealer, arguing that since the "original disclosed credit terms were not implemented," the disclosures could not have been accurate, thereby constituting a TILA violation. *See Leguillou,* 2000 WL 198796 at *3–4. The district court rejected this claim, holding that "[a]ccurate disclosures do not become [TILA] violations because they are rendered inaccurate by subsequent events." *Id.* (citing 15 U.S.C.

5. Lustine also argues that TILA's one year statute of limitations bars Scroggins' claim because the first set of documents was signed on November 16, 2001, and the suit filed more than one year later. Scroggins counters by arguing that the controlling date is December 6, 2001, the date the second set of documents was signed, which is exactly one year before the suit was filed. Because Scroggins has not stated a valid TILA claim, it is unnecessary to reach or decide this issue.

§ 1634). The fact that "a condition subsequent was used to cancel the contract...does not undermine the validity of the original TILA disclosures." *Id.* Thus, there, as here, "the lack of available financing...[as agreed to in the contract] does not render the disclosures actionable" under TILA. *Id.*

Accordingly, Scroggins' complaint fails to state a claim under TILA because Lustine's disclosures were correct at the time that they were made.

An appropriate order will issue.[6]

---

6. Lustine's motion also seeks dismissal of Scroggins' FCRA and state claims. Yet, for the following reasons, this motion must be denied.

The FCRA states that if "any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report," that person is required to provide the customer with notice of her rights under the FCRA. *See* 15 U.S.C. § 1681m(a). And, the term "adverse action" is defined as the "denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." *See* 15 U.S.C. § 1681a(k)(1)(A) (referring to 15 U.S.C. § 1691(d)(6)). Given these principles, Lustine contends the complaint fails to allege specifically that the denial of credit was based on information in Scroggins' credit report. Although it is true that there is no such explicit allegation in the complaint, that allegation is nonetheless a fair, if weak, inference that may be drawn from the complaint's other allegations. And, it is clear that Scroggins is entitled to the benefit of such an inference. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir.2002) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999)).

Moreover, because it appears that Scroggins' FCRA and state claims arise from a single event, namely Lustine's denial of financing for the purchase of a car from defendant, it follows that there exists supplemental jurisdiction over the state claims, under 28 U.S.C. § 1367. Yet, it is worth noting that if Scroggins' FCRA claim fails on summary judgment, then all of the remaining state claims will be dismissed without prejudice to be pursued in state court. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (holding that "if the federal claims are dismissed before trial,...the state claims should be dismissed as well").