Amal EL–REEDY, Plaintiff,

v.

ABACUS TECHNOLOGY CORPORATION; and Salient CRGT, Inc., Defendants.

C/A No.: 2:17–cv–0444 DCN

United States District Court, D. South Carolina, Charleston Division.

Signed 8/7/2017

Cara Y. Crotty, Constangy Brooks Smith and Prophete, Matthew Stanley Brown, Littler Mendelson, Columbia, SC, for Defendants.

## ORDER

David C. Norton, United States District Judge

The above referenced case is before this court upon the magistrate judge's recommendation that defendant Salient's motion to dismiss plaintiff's cause of action for constructive discharge be denied.

■ This court is charged with conducting a de novo review of any portion of the magistrate judge's report to which a specific objection is registered, and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). However, absent prompt objection by a dissatisfied party, it appears that Congress did not intend for the district court to review the factual and legal conclusions of the magistrate judge. Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Additionally, any party who fails to file timely, written objections to the magistrate judge's report pursuant to 28 U.S.C. § 636(b)(1) waives the right to raise those objections at the appellate court level. United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).[1] **No objections have been filed to the magistrate judge's report and recommendation.**

Ashley Long Falls, Joseph Scott Falls, Falls Legal, Charleston, SC, for Plaintiff.

---

1. In Wright v. Collins, 766 F.2d 841 (4th Cir. 1985), the court held "that a pro se litigant must receive fair notification of the consequences of failure to object to a magistrate judge's report before such a procedural default will result in waiver of the right to appeal. The notice must be 'sufficiently understandable to one in appellant's circumstances fairly to appraise him of what is required.' " Id. at 846. Plaintiff was advised in a clear manner that his objections had to be filed within ten (10) days, and he received notice of the consequences at the appellate level of his failure to object to the magistrate judge's report.

A *de novo* review of the record indicates that the magistrate judge's report accurately summarizes this case and the applicable law. Accordingly, the magistrate judge's report and recommendation is **AFFIRMED**, and defendant Salient's motion to dismiss plaintiff's cause of action for constructive discharge is **DENIED.**

**AND IT IS SO ORDERED.**

Bristow Marchant, United States Magistrate Judge

## REPORT AND RECOMMENDATION

This action has been filed by the Plaintiff, who contends that she is a former employee of both Defendants (collectively referred to as "Defendants")[1], asserting claims for hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, on the basis of race, national origin, religion and color (First and Third Causes of Action); harassment/hostile work environment and retaliation in violation of 42 U.S.C. § 1981 on the basis of race (Second and Fourth Causes of Action), and constructive discharge (Fifth Cause of Action).

The Defendant Salient CRGT, Inc. ("Salient") filed a partial motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P., on March 30, 2017. Plaintiff filed a memorandum in opposition to Salient's motion on April 27, 2017. Salient's motion is now before the Court for disposition.[2]

### Plaintiff's Allegations

Plaintiff alleges that she is a fifty year old United States citizen who was born in Egypt, that she is a member of the "Arabic" race and is of Arabic/Egyptian descent, that she speaks Arabic and is fluent in English, that her religion is Islam, and that she identifies as a Muslim. See Complaint, ¶¶ 9–12. Plaintiff alleges that after Salient was awarded a contract through the United States Government to provide training services for Royal Saudi Naval Forces ("RSNF") in Charleston, South Carolina, it sought bids from subcontractor companies to fulfil certain requirements under the RSNF contract. See Complaint, ¶¶ 13–14. After Defendant Abacus Technology Corporation ("Abacus") was awarded a bid from Salient, which included funding for one full-time Administrative Assistant employee, it ultimately hired Plaintiff for the position on or about August 3, 2015, and informed Salient of the hire. See Complaint, ¶¶ 15 & 17. During her employment, Abacus was responsible for Plaintiff's compensation and benefits, processed payroll for the Plaintiff, and maintained workers compensation insurance coverage for her. See Complaint, ¶¶ 19–20.

Plaintiff alleges that she was the only Abacus employee at the work site and that Salient furnished her with all equipment and tools, including her computer. See Complaint, ¶ 22. Plaintiff alleges there were no Abacus managers or supervisors at the site, and that her day-to-day duties were directed and supervised by Salient

---

1. While Plaintiff contends that she was jointly employed by the Defendants, Defendant Salient CRGT, Inc. ("Salient") denies that it was her employer. See Court Docket No. 23, p. 1; see Court Docket No. 24, p. 1. However, that dispute is not part of the current motion before the Court.

2. This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant Salient has filed a partial motion to dismiss. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

Management, including her day-to-day work schedule, the details of her work assignments, her job performance, and job training. See Complaint, ¶¶ 23–24, 26, 29. Salient also had the authority to promote, demote, and discipline the Plaintiff. See Complaint, ¶ 32.

Plaintiff alleges that she was harassed on the basis of her race, national origin, religion and color throughout her entire employment, and that such actions culminated in her resignation on December 30, 2015. See Complaint, ¶ 37.

### Discussion

Salient argues in its motion that Plaintiff's Fifth Cause of Action for constructive discharge should be dismissed pursuant to Rules 12(b)(1) and 12 (b)(6), Fed.R.Civ.P., because 1) Plaintiff failed to exhaust her administrative remedies, and 2) Plaintiff has failed to set forth sufficient factual allegations to state a claim on which relief can be granted.

 With regard to Salient's challenge to the Court's subject matter jurisdiction under Rule 12(b)(1), failure to exhaust administrative remedies deprives a court of subject matter jurisdiction of a Title VII claim. Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). The Plaintiff bears the burden of proving, by a preponderance of the evidence, the existence of subject matter jurisdiction. Demetres v. East West Const., Inc., 776 F.3d 271, 272 (4th Cir. 2015). A test of subject matter jurisdiction can be based on a facial or factual challenge. Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). Here, Salient makes a factual challenge by asserting that Plaintiff failed to exhaust her administrative remedies.

In considering a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." Kerns, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Velasco v. Gov't Of Indonesia, 370 F.3d 392, 398 (4th Cir. 2004); see also United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347–48 (4th Cir. 2009) ("Unless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' the district court may … resolve the jurisdictional facts in dispute by considering evidence … such as affidavits.") (Citation omitted). But, where the jurisdictional allegations are inextricably intertwined with the facts central to the merits of the claim, the usual "presumption of truthfulness" should attach to the factual allegations of the complaint, and the court "should then afford the plaintiff the procedural safeguards—such as discovery—that would apply were the plaintiff facing a direct attack on the merits." Kerns, 585 F.3d at 193.

Class Produce Grp., LLC v. Harleysville Worcester Ins. Co., No. 16-3431, 2017 WL 2377105, at *7 (D. Md. May 31, 2017).

When considering a Rule 12 (b)(6) motion to dismiss for failure to state a claim, the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the party opposing the motion. The motion can be granted only if the party opposing the motion has failed to set forth sufficient factual matters to state a plausible claim for relief "on its face". Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "[O]n a motion to dismiss, the Court does not weigh the strength of the evidence, and simply considers whether the [claim] alleges sufficient facts which, if true, would permit a reasonable fact finder to find [the party seeking dismissal of the claim] liable."

Vogt v. Greenmarine Holding, LLC, 318 F.Supp.2d 136, 144 (S.D.N.Y. 2004).

Pursuant to these standards, and for the reasons set forth hereinbelow, Salient's motion should be denied at this time.

## I.

As noted, in her pleading Plaintiff alleges in her Fifth Cause of Action that she was constructively discharged because the Defendants' calculated effort pressured and/or forced her into resignation through the imposition of hostile and unreasonably harsh conditions. See Complaint, ¶ 107. Plaintiff asserts this claim under Title VII, § 1981, and (apparently) the South Carolina Human Affairs Law (SCHAL), S.C. Code Ann. § 1–13–30, et. seq. See Complaint, ¶¶ 5–7, 85–87, 100, 105.

■ Salient asserts that Plaintiff's constructive discharge claim is subject to dismissal because she did not exhaust her administrative remedies with respect to any such claim prior to filing this lawsuit. However, with regard to Plaintiff's § 1981 claim, there is no exhaustion requirement. See Doe v. Virginia Dep't of State Police, 713 F.3d 745, 774 n. 6 (4th Cir. 2013)(citing Lilly v. Harris–Teeter Supermarket, 720 F.2d 326, 334 (4th Cir. 1983)[recognizing previously settled rule that, as to discrimination "claims brought under 42 U.S.C. § 1981, exhaustion of EEOC remedies is not a prerequisite to filing suit"] ); see also Hale v. Bd. of Trustees of S. Illinois Univ. Sch. of Med., 219 F.Supp.3d 860, 868 (C.D.Ill. 2016)[finding it was immaterial as whether the § 1981 claims were contained in the charge of discrimination since § 1981 does not require exhaustion]; Caetio v. Spirit Coach, LLC, 992 F.Supp.2d 1199, 1209 (N.D.Ala. 2014) ["There are no administrative prerequisites to the mainte-

nance of a § 1981 claim"]. Therefore, Plaintiff's claim for constructive discharge in violation of § 1981 is not barred by any failure by her to exhaust her administrative remedies.

As for Plaintiff's claim under Title VII, as correctly noted by the Defendant, in order to bring a lawsuit in United States District Court under Title VII, a plaintiff is first required to properly exhaust his or her administrative remedies.[3] Specifically, a claimant is required to file a charge of discrimination with the EEOC within one hundred and eighty (180) days of the alleged discriminatory act or acts, or, if the alleged discrimination occurred in a "deferral state", within three hundred (300) days from the alleged discriminatory act or acts if the claimant initially institutes proceedings with the appropriate state agency, or within thirty (30) days of the state agency's termination of its proceedings, whichever is earlier. See 42 U.S.C. § 2000e–5(e).

Since South Carolina is a deferral state, the South Carolina Human Affairs Commission (SCHAC) is the appropriate state agency for instituting administrative proceedings, and the record shows that Plaintiff did file a charge of discrimination with SCHAC and the EEOC dated January 20, 2016. See Defendant Salient's Exhibit A. However, Salient argues in its motion that the filing of this administrative charge by the Plaintiff did not exhaust her administrative remedies under Title VII with respect to any claim for constructive discharge because Plaintiff failed to specifically assert any such claim in her administrative charge. See Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000)["Before filing suit un-

---

**3.** While the South Carolina Human Affairs Law also has administrative exhaustion requirements, Salient does not assert in its motion that Plaintiff failed to exhaust her admin-

istrative remedies under that statute. In fact, neither party has addressed in their briefs the applicability of SCHAL to Plaintiff's constructive discharge claim.

der Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC [or SCHAC]"]. For her part, Plaintiff does not contest that she did not use the specific term "constructive discharge" in her administrative filings, but nonetheless argues that the Defendant was clearly on notice of this claim.[4]

In determining the scope of Plaintiff's exhausted claims, the Court is bound by the scope of Plaintiff's claims as are set forth in her administrative charge, and only those discrimination claims set forth in the administrative charge, reasonably related thereto, or which were developed by a reasonable investigation of the claims set forth in the original charge may be maintained in a subsequent Title VII lawsuit. Bryant v. Bell Atlantic MD., Inc., 288 F.3d 124, 132 (4th Cir. 2002); Evans v. Techs. Applications & Serv., Co., 80 F.3d 954, 963 (4th Cir. 1996); Jones, 551 F.3d at 300 ["Allowing a complaint to encompass allegations outside the ambit of the predicate [administrative] charge would circumscribe [the administrative agency's] investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely ... charge"]; Dorsey v. Pinnacle Automation, Co., 278 F.3d 830, 838 (8th Cir. 2002)(internal quotation marks and citations omitted).

Plaintiff argues that she did assert allegations sufficient to support her contention that she was constructively discharge in her administrative charge; see Plaintiff's Memorandum in Opposition to Summary Judgment, pp. 3–10; and after review of the relevant administrative filings, the undersigned agrees. In her charge, Plaintiff detailed numerous examples of how she was allegedly harassed and mistreated at her work place, and then concluded by stating that "[o]n December 16, 2015, after I could no longer take the harassing environment any longer, I emailed my resignation to my Abacus supervisor, letting him know that December 30[th] would be my last day of work." Salient's Exhibit A (Plaintiff's Charge with Attached Affidavit), Court Docket No. 11-2, p. 6. Hence, although Defendant argues in its brief that "Plaintiff neither included substantive allegations specifically alleging she was constructively discharged nor did she even imply she was constructively discharged"; Defendant's Brief, p. 2; Plain-

---

4. Plaintiff further states in her brief that there are

differing schools of thought as to whether "constructive discharge" is better viewed as an independent cause of action or as an element or a method of proving other causes of action. Compare Alford v. Wang, Inc., 11 F.Supp.3d 584, 594 n. 1 (D.S.C. 2014)("constructive discharge is an element of a structurally larger claim, to wit Title VII ... as opposed to some legal end unto itself."), with Lauture v. St. Agnes Hosp., 2009 WL 5166253, at * 3, 2009 U.S.Dist. LEXIS 120707, at *9 (D.Md. Dec. 29, 2009), aff'd, 429 Fed.Appx. 300, 307–308 (4th Cir. 2011) (analyzing a constructive discharge claim separately from the plaintiff's claims for discrimination, hostile work environment, breach of contract, and intentional infliction of emotional distress).

It is of little consequence whether the Court prefers construing the constructive discharge claim as an independent cause of action or whether the Court views the claim to be more properly analyzed as an element of proving the other causes of action. See Plaintiff's Memorandum in Opposition, pp. 1–2. Here, however, Plaintiff has asserted a Title VII claim for constructive discharge; see Green v. Brennan, —— U.S. ——, 136 S.Ct. 1769, 1779, 195 L.Ed.2d 44 (2016) ["[A] claim for constructive discharge lies under Title VII"], quoting Pennsylvania State Police v. Suders, 542 U.S. 129, 142, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004); and therefore that is how her claim has been evaluated herein. Green, 136 S.Ct. at 1779 [Noting that "constructive discharge is a claim distinct from the underlying discriminatory act"].

tiff's administrative charge clearly included a claim that her workplace had become intolerable and that, as a result, she had resigned. Cf. Young v. National Center for Health Services Research, 828 F.2d 235, 237–238 (4th Cir. 1987)[holding that failure to use the precise words "constructive discharge" are not fatal to plaintiff's claim where plaintiff complained that she felt forced to resign];[5] see also Nance v. University of South Carolina, No. 13-1803, 2015 WL 5037016, at * 14 (D.S.C. Aug. 26, 2015) [Noting that the Fourth Circuit Court of Appeals has recognized that "exhaustion of administrative remedies may be satisfied where the claim is within the scope of the reasonable investigation of the charge]; Bryant, 288 F.3d at 132 [Claims exhausted where they are set forth in administrative charge, are reasonably related thereto, or were part of a reasonable investigation of the claim included in the original charge].[6]

Therefore, the undersigned does not find that Plaintiff's allegations of constructive discharge under Title VII should be dismissed at this time on a Rule 12 motion based on failure to exhaust. Cf. Jones v. Southpeak Interactive Corp. of Delaware, 777 F.3d 658, 669 (4th Cir. 2015)["The exhaustion requirement should not become a tripwire for hapless plaintiffs. While it is important to stop clever parties from circumventing statutory commands, we may not erect insurmountable barriers to litigation out of overly technical concerns."](quoting Sydnor v. Fairfax Cty.

Va., 681 F.3d 591, 594 (4th Cir. 2012); see also Class Produce Group, LLC, 2017 WL 2377105, at *7 ["[w]here the jurisdictional allegations are inextricably intertwined with the facts central to the merits of the claim, the usual presumption of truthfulness should attach to the factual allegations of the complaint, and the court should then afford the plaintiff the procedural safeguards . . . that would apply were the plaintiff facing a direct attack on the merits."] (internal quotations omitted).

## II.

■■■■ Salient next contends that Plaintiff's allegations are insufficient to state a claim for constructive discharge. In order to present a viable claim for constructive discharge in her Complaint, Plaintiff must have allegations sufficient to set forth a plausible claim "on its face" that she was subjected to employment practices which were both discriminatory and made her working conditions intolerable, thus forcing her or inducing her to quit. Iqbal, 129 S.Ct. at 1949; Green, 136 S.Ct. at 1776–1777; Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353–1354 (4th Cir. 1995); Garrett v. Hewlett–Packard Co., 305 F.3d 1210, 1221 (10th Cir. 2002) ["Constructive discharge occurs 'when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign' . . . .]. In other words, Plaintiff's factual allega-

---

5. The undersigned notes that the Court in Young did not have a copy of the charge and was discussing language used by the plaintiff in that case in her conversation with her EEO counselor.

6. Plaintiff also argues that Salient's own EEOC Position Statement (which Plaintiff states she did not submit because a Confidentiality Order had not been entered in this case and the document had been previously marked as confidential), supports her claim

that Salient had notice of her constructive discharge claim because Salient itself devoted a paragraph to addressing Plaintiff's claim of constructive discharge. However, although Plaintiff has offered to submit this document *in camera* as further support for her position that Salient had actual knowledge of her constructive discharge claim, for the reasons set forth hereinabove the undersigned does not find that submission of this document is necessary at this time in order to resolve this issue.

tion must present a plausible claim that her employer's actions were so discriminatory that a reasonable person in her position would have felt compelled to resign, and that she actually did so. Green,[7] 136 S.Ct. at 1777; see also Heiko v. Colombo Sav. Bank F.S.B., 434 F.3d 249, 262 (4th Cir. 2006); Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985).

 Salient argues that Plaintiff has failed to set forth a claim for constructive discharge because Plaintiff's allegations show her work conditions were not intolerable, as demonstrated by her allegation that she gave a two week notice and then worked for that time as opposed to immediately quitting,[8] and citing to Dabney v. Kershaw Cty., No. 11-666, 2013 WL 1206284, at * 5 (D.S.C. Jan. 15, 2013), report and recommendation adopted, 2013 WL 120623 (D.S.C. Mar. 25, 2013)(citing Shelar v. Ameripride Servs., Inc., No. 03-4205, 2006 WL 1877010, at * 9 (D.Kan. July 6, 2006). See Complaint, ¶¶ 65, 71. However, the undersigned is constrained to note that both Dabney and Shelar were before the court on motions for summary judgment (where the Court reviews and considers the evidence in the case to determine the sufficiency of a claim), not on

motions to dismiss (as is the case here), where all that is necessary is that Plaintiff's Complaint set forth sufficient allegations to make out a "plausible" claim. See Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 248 (4th Cir. 2005)["Courts should not dismiss a complaint for failure to state a claim unless 'after accepting all well-pleaded allegations in the Plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief' "], citing Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999); see also Austen v. HCA Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203 at *1 (4th Cir. Mar. 12, 2001) [Iqbal's plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]]; and, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely"]; citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation marks and citations omitted). Moreover, in Green the

---

7. While Green is a Title VII case, the standards applicable to lawsuits under § 1981 are basically the same as the standards applicable to lawsuits under Title VII, with the same caselaw being used to evaluate a claim under either statute. See Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1050 (8th Cir. 2002)["In analyzing a claim ... under section 1981, we apply the same standards as in a similar Title VII claim."]; Long v. First Union Corp. of Virginia, 894 F.Supp. 933, 945 (E.D.Va. 1995); Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997). Plaintiff's claim under SCHAL is also evaluated under the same standards as are used for evaluating her federal claims. Burns v. South Carolina Dept. of Transportation, No. 05-3271, 2006 WL 3791361, * 5 (D.S.C. Dec. 22, 2006); see also Orr v. Clyburn, 277 S.C. 536, 290 S.E.2d 804, 806 (1982); Tyndall v. National Edu-

cation Centers, 31 F.3d 209 (4th Cir. 1994); S.C. Code Ann. & 1-13-10 et al (2003); cf. Cromer v. Greenwood Com'n of Public Works, No. 92-CP-24-392, 1993 WL 328182, *4 (S.C.Com.Pl. Feb. 3, 1993) ["The court notes that its ruling accords with the interpretation of federal employment discrimination laws upon which our state employment discrimination laws are modeled."]. Therefore, the analysis set forth herein with respect to Plaintiff's constructive discharge claim under Title VII also applies to this claim as asserted by Plaintiff under § 1981 and SCHAL.

8. Although not dispositive of the outcome on this issue, Plaintiff alleges that she took vacation time for part of this two week time period and did not have to be physically present in the office.

United States Supreme Court discusses whether the limitations period for a constructive discharge claim begins to run when an employee gives notice of his resignation or on the effective date of his resignation, thereby recognizing that the fact that an employee may keep working for a time does not necessarily void a constructive discharge claim. Green, 136 S.Ct. at 1782.[9] Notably, all of the cases cited by the Defendant as support for its argument against allowing a "delayed resignation" constructive discharge claim predate the Supreme Court's decision in Green. See Defendant's Brief, pp. 7–8. Therefore, the undersigned does not find that Salient is entitled as a matter of law to a dismissal of Plaintiff's constructive discharge cause of action due to her giving a two week notice of her resignation.

Finally, Salient also argues that Plaintiff has not alleged sufficient facts to show intolerability of her working conditions.[10] However, the undersigned again notes that the majority of the cases (10 of 12) cited by Salient in this argument were decided on summary judgment, or even after a jury trial, not on motions to dismiss.[11] Additionally, Plaintiff has set forth sufficient factual allegations to present a "plausible" claim of intolerability of working conditions. Vogt, 318 F.Supp.2d at 144 ["[O]n a motion to dismiss, the Court does not weigh the strength of the evidence, and simply considers whether the [claim] alleges sufficient facts which, if true, would permit a reasonable fact finder to find [the party seeking dismissal of the claim] liable."].

Plaintiff has alleged that coworkers questioned her regarding whether she and her husband were Muslims, talked about how Muslims are crazy and stupid, said that Muslims should shut the "f* * * up" and needed to ask their Allah to help them now, referred to Muslims during their Hajj pilgrimage as "stampeding cattle", stated that all Muslims should be entered into a database, and that one coworker even stated he was buying more guns because he was sick of all this Muslim "bull* * **." See Complaint, ¶¶ 38–41. Plaintiff further alleges that after she reported these incidents to both Defendants; see Complaint, ¶ 42; Salient's only response was to require its nine employees to complete a Workplace Diversity online training video, after which her coworkers stated that the training was stupid and that they did not understand why they had to spend time on such nonsense, with one employee complaining to Plaintiff "[w]e all have to take this crap now. This blows." See Complaint, ¶ 46. Plaintiff also alleges that one of her supervisors brought pork to work to cook and chastised her about her religious beliefs about not eating pork; See Complaint, ¶ 50. that that same supervisor also told her that he had been to Egypt and did not like it; see Complaint, ¶ 55; that Plaintiff was called a spy by her manager and team leader; see Complaint, ¶ 51;

---

9. In Green, the employee submitted his resignation on February 9, 2010, but it was not effective until March 31, 2010. Id.. at 1774.

10. For purposes of this motion only, Salient concedes Plaintiff's allegations sufficiently plead the "deliberateness" of Salient's alleged actions. See Memorandum in Support of Motion to Dismiss, p. 9.

11. Even with regard to the two cases cited by Salient that were decided on motions to dismiss, those cases do not support dismissal of

Plaintiff's claims at this time. Mozingo v. South Financial Group, Inc., 520 F.Supp.2d 733, 742 (D.S.C. 2007), dealt with a plaintiff who resigned because he believed that if he remained on the job he was going to be fired due to an allegation regarding fraud. Those facts are not on point with the current case. In Repasky v. Pfizer, No. 12-3331, 2013 WL 6054461 (D.S.C. Nov. 15, 2013), Defendant's motion to dismiss a hostile work environment claim that included allegations of constructive discharge was denied.

that another employee said to Plaintiff "just because our government trusts you does not mean that we do;" see Complaint, ¶ 51; that her manager and another employee compared her to a well-known animated cartoon spy; see Complaint, ¶ 53; and that comments were made in the workplace about camels and sandals, hunting camels on the weekends for fun, and that if Plaintiff went to Saudi Arabia she would come back radicalized wearing sandals too. See Complaint, ¶ 54.

Following the San Bernardino terrorist attacks, Plaintiff alleges that a coworker made a reference about the terrorist's wife and to her not having her "chocolate" that day, which Plaintiff viewed as a direct comparison between her and the terrorist's wife since it was commonly known that Plaintiff enjoyed chocolate and always brought large quantities of chocolate to the office for her and others to enjoy. See Complaint, ¶¶ 56–58. Plaintiff also alleges that following her first internal complaint, coworkers would regularly pass gas, make vulgar comments, and use profanity in close proximity to Plaintiff's work station. See Complaint, ¶ 60. Plaintiff alleges that during a group training session a comment was made about Saudi Arabians not working hard, and that when Plaintiff asked questions during the training session she was ridiculed, put down, or simply hushed. See Complaint, ¶ 61. Plaintiff alleges that when she made her feelings known during the meeting, the team leader stopped the meeting and everyone went to lunch, from which Plaintiff was excluded. See Complaint, ¶ 62. Plaintiff was then subsequently verbally reprimanded by one of her supervisors for being "disruptive" during the meeting and informed her that he was "going to have to escalate this." See Complaint, ¶ 64. Plaintiff alleges her supervisor went on to state that the comment about the Arabic culture not working hard was not disrespectful because it was true based on the number of hours they worked per day compared to Americans. See Complaint, ¶ 64. Plaintiff alleges that after that meeting and fearful that she would be terminated, she submitted her two week resignation notice to Abacus. See Complaint, ¶ 65.

These allegations sufficiently allege that Plaintiff was subjected to such a degree of intolerable discriminatory conduct that she felt compelled to resign, as well as that she actually did resign, to present a "plausible" claim for constructive discharge. Green, 136 S.Ct. at 1777 [A claim of constructive discharge has two basic elements: 1) that the employee was discriminated against by the employer to the point where a reasonable person would have felt compelled to resign, and 2) the employee actually resigned]; Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1132–1133 (4th Cir. 1995)[Finding that employee had shown intolerable conditions where he alleged he was subjected to epithets about his Iranian heritage and embarrassed publicly by coworkers, and reversing the lower court's grant of summary judgment on employee's constructive discharge claim]; Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 225–226 (4th Cir. 2016)[Where Persian employee was subjected to comments such as employer's referring to Arabs as "camel people", Fourth Circuit held that the "[Arab employee's] assertion is that her Arab ethnicity motivated [the employer's] conduct, or at least enough of his conduct to constitute intolerable working conditions ... the comments were more than distasteful, and it is beyond euphemistic to characterize them as references and inquiries. More to the point, many of these comments were either clearly or conceivably racial."]; cf. Freeman v. Dal–Tile Corp., 750 F.3d 413, 422 (4th Cir. 2014)[holding that coworkers passing gas around plaintiff's work area could evidence a hostile work environment].

Therefore, the Defendant Sailent is not entitled to a Rule 12 dismissal of Plaintiff's constructive discharge claim for failure to state a claim at this time. Iqbal, 129 S.Ct. at 1949 [Motion to dismiss can be granted only if the party opposing the motion has failed to set forth sufficient factual matters to state a plausible claim for relief "on its face"]; see Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002)["[W]hen [dismissal for failure to state a claim] involves a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged' "], citing Harrison v. United Postal Service, 840 F.2d 1149, 1152 (4th Cir. 1988).

### Conclusion

Based on the foregoing, it is recommended that Defendant Salient's motion to dismiss Plaintiff's cause of action for constructive discharge be **denied**.

The parties are referred to the Notice Page attached hereto.

July 18, 2017

### Attachment

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir.

2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk

United States District Court

Post Office Box 835

Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).