PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOSEPH BRYANT, SR.,
            *Plaintiff-Appellant,*

v.

BELL ATLANTIC MARYLAND,
INCORPORATED; BELL ATLANTIC
NETWORK SERVICES, INCORPORATED,
            *Defendants-Appellees.*

No. 01-1541

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CA-99-1245-L, CA-99-1246-L)

Argued: November 1, 2001

Decided: April 29, 2002

Before WIDENER and MICHAEL, Circuit Judges, and
Frank J. MAGILL, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

---

Affirmed by published opinion. Senior Judge Magill wrote the opinion, in which Judge Widener and Judge Michael joined.

---

## COUNSEL

**ARGUED:** Howard Jay Needle, Baltimore, Maryland, for Appellant. Ralph Michael Smith, DECHERT, PRICE & RHOADS, Washington, D.C., for Appellees.

**OPINION**

MAGILL, Senior Circuit Judge:

Joseph Bryant, Sr., appeals the district court's decision dismissing on summary judgment his claim seeking enforcement of an arbitration award won by Bryant against his employer, Bell Atlantic Maryland, Inc., and Bell Atlantic Network Services, Inc. (collectively "Bell Atlantic"). Bryant also appeals the district court's decision dismissing on summary judgment his claims of employment discrimination because of his color, race, and/or gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981"), and unlawful retaliation, in violation of Title VII. Bryant contends that (1) he has standing to seek enforcement of the arbitration award, (2) the district court erred in failing to recognize the recent Supreme Court clarification to the proof requirements under the burden-shifting standard in Title VII and Section 1981 cases, and (3) the district court erred in granting summary judgment because there are genuine issues of material fact still in dispute. For the reasons stated below, we affirm.

## I.  *BACKGROUND*

Joseph Bryant, an African-American employee of Bell Atlantic since 1973, belongs to a bargaining unit represented by the Communications Workers of America, AFL-CIO ("CWA"). As a member of the CWA, Bryant's employment is covered by a collective bargaining agreement between Bell Atlantic and the CWA. In 1995, Bell Atlantic implemented the Red Letter Day policy, or Assigned Overtime Availability policy, to address increased customer service demands and the cost and inconsistency of a volunteer overtime system. Under the policy, Bell Atlantic posted a schedule, encompassing a period of several weeks, which notified employees of specific days that they must be available to work overtime if the need arose. In addition, an employee was assigned one Red Letter Day per week, with the assigned day of the week varying from week to week. When the policy was first implemented, employees were required to complete one overtime assignment on their Red Letter Day after their regular assigned jobs were completed. In late 1995 or early 1996, Bell Atlantic amended

the policy, requiring employees to perform two overtime jobs per Red Letter Day.[1]

In 1995, Bryant, a single parent with physical custody of his two minor children, protested the Red Letter Day policy in a grievance arguing that it was difficult for him to work week-night overtime and meet his child care responsibilities. Prior to the implementation of the policy, Bryant refused overtime assignments because of his child care responsibilities and incurred no discipline for his refusals. However, in 1995, after implementation of the policy, Bryant received a written warning, a one-day suspension, and a three-day and five-hour suspension for failure to work his assigned Red Letter Days. On September 27, 1995, when Bryant returned to work following his suspension, he received a memo from a supervisor indicating that if he failed to work his Red Letter Days, or did not get someone to work for him and notify his supervisor, disciplinary action, up to and including dismissal, would be taken against him.

Between late 1995 and early 1996, Bryant made an effort to meet his Red Letter Day obligations by swapping assignments with co-workers and picking up his children at 6:00 p.m. from after-school care. However, when Bell Atlantic amended the Red Letter Day policy to require employees to complete two overtime assignments, Bryant again had difficulty meeting his Red Letter Day obligations. At some time during this period, the president of the CWA asked Bell Atlantic management to allow co-workers to perform Bryant's Red Letter Day assignments. Bell Atlantic, however, allegedly refused this

---

[1]The Red Letter Day policy was unsuccessfully grieved by the CWA pursuant to the grievance/arbitration procedure of the collective bargaining agreement. The CWA took the position that Bell Atlantic did not have the right to require overtime work in this particular manner. In a March 25, 1997 decision, the arbitrator concluded that the Red Letter Day policy was a "reasonable policy not in violation of the General Agreement or any established past practice." In part, the arbitrator based her decision of reasonableness on the fact that the policy allowed for reasonable excuses, even though the employees were not informed of the type of excuse that would be accepted or what discipline would be imposed for a violation of the policy. Bell Atlantic contends that supervisors could excuse a technician from working a Red Letter Day for unexpected emergencies, on a case-by-case basis.

offer. On August 1, 1996, a Red Letter Day, Bryant did not complete his regular jobs until 6:00 p.m.; consequently, Bryant was unable to perform his overtime assignments. On August 5, 1996, Bryant received a nine-day suspension.

During a meeting between Bryant and Bell Atlantic on August 28, 1996, Bell Atlantic presented Bryant with four options of accommodation. Bryant's child care responsibilities made it impossible for Bryant to consider three of the options. Bryant agreed to attempt the fourth option, which required Bryant to designate one day during the week as his regular Red Letter Day, leave work early on that day to pick up his children from school, transport his children to a care provider, and then return to work to complete his overtime assignments. This accommodation, however, apparently did not resolve the conflict.

From September 30, 1996, through mid-December 1996, Bell Atlantic excused Bryant from working his Red Letter Days for medical reasons. On December 18, 1996, Bell Atlantic notified Bryant that his medical excuse had terminated. Then, on January 6, 1997, Bell Atlantic issued Bryant a final warning and a thirty-day suspension for failing to complete two overtime assignments on two separate occasions. Bryant returned to work on February 18, 1997. On March 3, 1997, Bryant's child care obligations made it impossible for him to complete his second Red Letter Day assignment. On March 5, 1997, Bell Atlantic followed through with its final warning and terminated Bryant. A company memo indicated that the basis for Bryant's discharge was repeated insubordination in failing to work assigned overtime.

The CWA filed a grievance on Bryant's behalf which, under the terms of the collective bargaining agreement, culminated in submission to an arbitrator the question whether Bell Atlantic had "just cause" to terminate Bryant's employment. The union represented Bryant before the arbitrator, and the adequacy of that representation has not been challenged. On July 30, 1998, after determining that Bell Atlantic did not have just cause to terminate Bryant, the arbitrator ordered Bell Atlantic to reinstate Bryant to his former position, or a substantially similar position, and to make Bryant "whole" for all losses suffered from the time of his discharge to his reinstatement.

The arbitrator also strongly suggested that Bryant be placed in a position that did not fall under the Red Letter Day policy or, in the alternative, that Bryant be scheduled for overtime in a manner that would allow him to meet his workplace and child care obligations. In August 1998, Bryant was reinstated by Bell Atlantic as a Construction Lineman, a position that has the same salary, same benefits, and similar promotional opportunities as his previous position. Bryant's new position is not subject to the Red Letter Day policy. Bell Atlantic also paid Bryant all of the back pay that the CWA stated was owed him.

On August 28, 1997, with his grievance against Bell Atlantic still pending, Bryant filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission on Human Relations ("MCHR") for his March 5, 1997 termination. In his EEOC complaint, Bryant alleged that he was discriminated against on the basis of his race. On January 20, 1999, the EEOC issued Bryant a right-to-sue letter.

On April 20, 1999, Bryant filed two civil actions against Bell Atlantic in the Circuit Court for Baltimore City. In the first complaint, Bryant sought enforcement of his July 30, 1998 arbitration award pursuant to the Maryland Uniform Arbitration Act (the "Act"), Md. Code (1974, 1998 Repl. Vol.), § 3-227 of the Courts and Judicial Proceedings Article. Bryant's second complaint included the following seven allegations: (1) discrimination based on color, race, and/or gender in violation of Title VII for discipline, suspension, and discharge; (2) discrimination based on race and/or color in violation of 42 U.S.C. § 1981; (3) denial of the benefits of the Equal Protection Clause of the Fourteenth Amendment; (4) wrongful discharge in violation of the public policies of the State of Maryland; (5) retaliation in violation of Title VII based on Bryant's EEOC and MCHR filings, and his grievance filings and the arbitration proceedings conducted pursuant thereto; (6) intentional infliction of emotional distress; and (7) invasion of privacy.

Bell Atlantic successfully removed both complaints to the United States District Court for the District of Maryland, and the district court consolidated both cases. Thereafter, Bell Atlantic filed a motion for summary judgment. In an order filed on March 16, 2001, the district court granted Bell Atlantic's motion for summary judgment on

all counts. The district court held that Bryant failed to establish a prima facie case of discrimination under Title VII or Section 1981. Moreover, the district court held that Bryant's claim seeking enforcement of the arbitration award could not survive because of Bryant's failure to exhaust the dispute resolution procedures specified in the collective bargaining agreement. In addition, the district court held that Bryant's right to bring a claim to enforce an arbitration award under the collective bargaining agreement was contingent upon a showing that the CWA breached its duty of fair representation. Thus, because Bryant did not attempt to demonstrate that the CWA breached its duty of fair representation, the district court held that Bryant lacked standing to seek enforcement of the arbitration award.[2] Bryant filed a timely appeal.

## II.   *ENFORCEMENT OF THE ARBITRATION AWARD*

We first address the issue of Bryant's standing to seek enforcement of the arbitration award. We understand Bryant's argument to be that he is entitled to seek judicial enforcement of the arbitration award under either Section 3-227 of the Maryland Uniform Arbitration Act or Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).

### A.   *Maryland Uniform Arbitration Act*

Bryant maintains that he has standing to seek judicial enforcement of the arbitration award pursuant to Section 3-227 of the Maryland Uniform Arbitration Act, which specifically provides for a judicial proceeding to enforce an arbitration award. Section 3-227(b) provides that "[t]he court shall confirm the [arbitration] award, unless the other party has filed an application to vacate, modify, or correct the award within the time provided in §§ 3-222 and 3-223." Thus, Bryant argues, because Bell Atlantic did not challenge the award, Section 3-227 provides Bryant with an avenue with which to seek enforcement of his award. We disagree.

---

[2]The district court also granted summary judgment to Bell Atlantic as to each of Bryant's additional claims, which Bryant does not challenge on appeal.

Section 3-206(b) of the Maryland Uniform Arbitration Act expressly excludes from its coverage "arbitration agreement[s] between employers and employees or between their respective representatives unless it is expressly provided in the agreement that [the Act] shall apply." Md. Code Ann., Cts. & Jud. Proc. § 3-206(b) (1974, 1998 Repl. Vol.); *see also Wilson v. McGrow, Pridgeon & Co., P.A.*, 467 A.2d 1025, 1031 (Md. 1983) (primary purpose of Section 3-206(b) is to exclude arbitration agreements in collective bargaining contracts from the Act). Bryant does not contend that the collective bargaining agreement at issue here expressly provides that the Maryland Uniform Arbitration Act should apply, nor do we find such a provision in the agreement. Therefore, Section 3-206(b) renders the Maryland Uniform Arbitration Act inapplicable here. *See Bd. of Educ. of Prince George's County v. Prince George's County Educators' Ass'n, Inc.*, 522 A.2d 931, 936 (Md. 1987) (finding that the absence of any reference to Maryland statute in collective bargaining agreement renders Maryland Uniform Arbitration Act inapplicable to suit seeking to vacate an arbitration award). We thus hold that Bryant is not entitled to seek enforcement of the arbitration award under the Maryland Uniform Arbitration Act.

### B.   *Section 301(a) of the Labor Management Relations Act*

On appeal, Bryant argues that Section 301(a) of the LMRA provides a jurisdictional basis for individual suits brought by employees. The district court disagreed, however, and granted Bell Atlantic's motion for summary judgment on the grounds that Bryant lacked standing to seek judicial enforcement of the arbitration award because he failed to exhaust the dispute resolution procedures specified in the collective bargaining agreement and did not attempt to demonstrate that the CWA breached its duty of fair representation.

An individual employee represented by a union, such as Bryant is, generally does not have standing to challenge, modify, or confirm an arbitration award because he was not a party to the arbitration. *See, e.g.*, *Cleveland v. Porca Co.*, 38 F.3d 289, 296-97 (7th Cir. 1994) (employees represented by union generally lack standing to enforce arbitration award because they are not parties to either the collective bargaining agreement or union-company arbitration); *Katir v. Columbia Univ.*, 15 F.3d 23, 24-25 (2d Cir. 1994) (per curiam) (same);

*Bacashihua v. USPS*, 859 F.2d 402, 405-06 (6th Cir. 1988) (same). The exception to this general rule is when the union has breached its duty of fair representation by failing to enforce the award on the employee's behalf.[3] *See, e.g.*, *Porca*, 38 F.3d at 297; *Katir*, 15 F.3d at 24-25; *Bacashihua*, 859 F.2d at 406. Bryant was not a party to the arbitration between the CWA and Bell Atlantic. In addition, Bryant has not attempted to show that the CWA breached its duty of fair representation. Accordingly, Bryant lacks standing to enforce the award, and the district court properly granted Bell Atlantic's motion for summary judgment.

## III.   *TITLE VII AND SECTION 1981 CLAIMS*

### A.   *Standard of Review*

We review the district court's summary judgment decision de novo, viewing the record in the light most favorable to the nonmoving party, here Bryant. *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An otherwise properly supported motion for summary judgment will not be defeated by the existence of some factual dispute; rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Hooven-Lewis*, 249 F.3d at 265. In reviewing the grant of summary judgment, we can affirm on any legal basis supported by the record and are not confined to the grounds relied on by the district court. *Jackson v. Kimel*, 992 F.2d 1318, 1322 (4th Cir. 1993).

### B.   *Retaliation, Color and Sex Discrimination Claims*

In granting Bell Atlantic's motion for summary judgment, the district court did not address Bryant's claims of retaliation, and color and sex discrimination. On appeal, Bell Atlantic contends that Bryant

---

[3]A union breaches its duty of fair representation of an individual employee when it acts in a "discriminatory, dishonest, arbitrary, or perfunctory" manner. *DelCostello v. Teamsters*, 462 U.S. 151, 164 (1983).

failed to exhaust his administrative remedies with respect to these claims, and consequently these claims are barred. We agree.

Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). The EEOC charge defines the scope of the plaintiff's right to institute a civil suit. *Id.* "An administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981).

In the present case, Bryant's *EEOC charge* alleges that Bell Atlantic discriminated against him based upon his race.[4] Bryant's *complaint* alleges that Bell Atlantic discriminated against him based upon his color,[5] race, and/or sex, and retaliated against him for filing com-

---

[4]On July 3, 1996, Bryant filed a charge of discrimination based on his race and sex for his September 21, 1995 suspension and May 30, 1996 verbal warning. Bryant received a right-to-sue letter from the EEOC based on this charge on April 21, 1997. On July 18, 1997, Bryant filed a timely pro se complaint in the United States District Court for the District of Maryland based on this charge. However, the district court dismissed this case, without prejudice, on December 10, 1997, for failure to effectuate service of the summons and complaint within the applicable time limitations. Bryant's second charge form filed with the EEOC for his March 5, 1997 termination did not charge discrimination based on Bryant's sex. Therefore, Bryant has failed to exhaust his administrative remedies with respect to his claim of sex discrimination for his alleged wrongful termination. Moreover, Bryant's claim of sex discrimination for his suspension and verbal warning are time-barred because Bryant filed his complaint outside the ninety-day limitations period in which a plaintiff has to file a claim after receiving a right-to-sue letter. *See* 42 U.S.C. § 2000e-5(f)(1).

[5]Color discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual. *See, e.g.*, *Walker v. Sec'y of the Treasury*, 713 F. Supp. 403, 406-07 (N.D. Ga. 1989). In his EEOC

plaints of discrimination with the EEOC and MCHR and for filing grievance and arbitration proceedings. Administrative investigation of retaliation, and color and sex discrimination, however, could not reasonably be expected to occur in light of Bryant's sole charge of race discrimination, and the investigation of the complaint did not touch on any matters other than race discrimination.[6] Therefore, because the scope of Bryant's complaint exceeds the limits set by the allegations of Bryant's administrative complaint, we cannot analyze the merits of Bryant's retaliation or color and sex discrimination claims.

## C.  *Race Discrimination Claims*

To establish a prima facie case of racial discrimination in the enforcement of employee disciplinary measures under Title VII,[7] Bry-

---

complaint, Bryant did not indicate that he was discriminated against on the basis of his skin color. Rather, Bryant's allegations in both his second EEOC charge form and his complaint focus exclusively on Bryant's race and are devoid of any hint that his particular skin tone motivated the alleged discrimination.

[6]The written findings of the MCHR, the administrative agency undertaking the investigation of Bryant's charge, include no reference to retaliation or color or sex discrimination. Quite the contrary, ¶ 15 of the written findings state:

> Regarding [Bryant's] allegation that the disciplinary action he received is based on his race, documentation presented reveals a total of thirty-six technicians were disciplined for the same or similar reason as [Bryant]. Of the thirty-five (35) technicians disciplined, only six (6), or 17% were minority employees. Documentation presented also revealed that seven (7) employees were terminated, of which only two (2), or 29%, were minority employees.

The written findings conclude by stating, "information and documentation presented revealed that [Bryant's] race was not a factor in the disciplinary action." ¶ 18.

[7]The required elements of a prima facie case of employment discrimination are the same under Title VII and Section 1981. *Gairola v. Commonwealth of Va. Dept. of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985).

ant must show that: (1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances. *See, e.g.*, *Hughes v. Bedsole*, 48 F.3d 1376, 1384 (4th Cir. 1995); *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993). Under the now familiar *McDonnell Douglas* tripartite burden-shifting framework, if Bryant succeeds in proving a prima facie case, the burden of going forward shifts to Bell Atlantic, the employer, who must then articulate a non-discriminatory reason for the difference in treatment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Should Bell Atlantic articulate a non-discriminatory reason, the burden then shifts back to Bryant to demonstrate that Bell Atlantic's reasons were not true, but instead were merely a pretext for discrimination. *Cook*, 988 F.2d at 511. The district court held that Bryant failed to establish a prima facie case of discrimination because of his failure to produce any evidence that Bell Atlantic made any decisions regarding him based on his race. While we commend Mr. Bryant for the seriousness with which he takes his child care responsibilities, we hold that his claim fails to establish a prima facie case of race discrimination.

It is undisputed that Bryant satisfied his burden with respect to the first three elements of his prima facie case. Nevertheless, Bryant is unable to advance proof that other employees who are not members of the protected class were treated differently than Bryant under similar circumstances. The facts demonstrate that between 1995 and March 1997, Bryant failed to work assigned overtime pursuant to the Red Letter Day policy on at least fifteen occasions. Although we view Bell Atlantic's implementation of its forced overtime policy to be harsh, Bryant is unable to show that Bell Atlantic treated similarly situated employees outside his class more favorably. Bryant attempts to so demonstrate by comparison to four Bell Atlantic employees. None of this evidence, however, supports Bryant's claim.

First, Bryant contends that he believes that Bell Atlantic excused Don Bradford, a Caucasian male, from working his Red Letter Days because his son was ill. The deposition testimony of Bradford, however, contradicts Bryant's allegation. In particular, Bradford testified that he never asked to be excused from a Red Letter Day, and when

he missed work to care for his terminally ill son, he either used vacation time or Family and Medical Leave time. Second, Bryant contends that Bell Atlantic excused Marian Diggins, a Caucasian female, from working a Red Letter Day. Diggins's testimony, however, contradicts this allegation. In particular, Diggins states that she was never excused from a Red Letter Day, and with the exception of failing to work one Red Letter Day because she "forgot," she worked all of her assigned Red Letter Days. As additional evidence, Bryant claims that Bell Atlantic excused Chris Price, a Caucasian single parent, from working his evening shift because of conflicts with his child care responsibilities, and permitted him to swap with other employees so that he could work his day shift. During his deposition, however, Bryant testified that the circumstances to which he was referring occurred after the Red Letter Day policy was rescinded, and that he did not know whether Price was excused from working his Red Letter Days to accommodate his child care responsibilities or for some other reason. Finally, Bryant contends that Bell Atlantic excused another Caucasian male from working Red Letter Days, despite being caught twice with a prostitute in his company truck. Once again, however, during his deposition, Bryant admitted that he had no personal knowledge of whether the individual ever asked for or was granted permission to not work his Red Letter Days because of child care responsibilities. Thus, none of the employees to which Bryant compares himself demonstrates that Bell Atlantic treated him any differently than members outside Bryant's class because none of these employees were engaged in the same type of misconduct attributed to Bryant.

Bryant also contends that the affidavit testimony of three individuals—Gloria Pack, service representative and vice president of the CWA; John Shickman, Bell Atlantic service technician; and Cedric Lyon, Bell Atlantic service technician—demonstrates that he was discriminated against because of his race.[8] These affidavits, how-

[8]Bryant also contends that genuine issues of material fact exist concerning: (1) whether he was allowed sufficient time to make child care arrangements; (2) the validity of his excuses to miss his Red Letter Days under the Family and Medical Leave Act; (3) whether he always sought permission to miss his Red Letter Days before he left work; (4) whether the job he was given after he won his arbitration was materially different

ever, amount to no more than subjective beliefs, and such evidence, without more, is insufficient to create a genuine issue of material fact as to any discriminatory conduct on Bell Atlantic's part. *See, e.g.*, *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) (unsupported speculation insufficient to defeat summary judgment). For example, the affidavit of Ms. Pack states, "I believe Harry Carver is a racist. He did not apply the Red Letter Day requirements uniformly. Several Black Service Technicians were fired under his supervision, but I am not aware of any White Service Technicians who were." Moreover, when deposed, Pack, Shickman, and Lyon all admitted that Bell Atlantic accommodated Bryant in ways that it did not accommodate other employees, Caucasian or African-American.[9]

Finally, Bryant contends that the district court failed to recognize and apply the recent standard of proof modification to the burden-shifting framework of Title VII cases established in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). Bryant's argument

from the one he held before arbitration; and (5) whether he was "made whole" as required by the arbitration award. Bryant's arguments, however, are irrelevant to the question whether Bryant was treated differently than similarly situated employees outside his class. *See Hooven-Lewis*, 249 F.3d at 265 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

[9]Bryant also contends that all of Bell Atlantic's affidavits in the record are defective because they do not state that they are based on personal knowledge and do not affirmatively state that the affiants are competent to testify to the matters stated therein. Therefore, Bryant argues that the affidavits do not satisfy the requirements of Rule 56(e) of the Federal Rules of Civil Procedure. Bryant's argument is without merit. We have held that in the Rule 56(e) context, "ordinarily, officers would have personal knowledge of the acts of their corporations." *Catawba Indian Tribe v. S.C.*, 978 F.2d 1334, 1342 (4th Cir. 1992). Bell Atlantic's affidavits contain sufficient information, including a description of the affiants' job titles and duties, to establish that the affiants' statements were made based on personal knowledge. In the absence of evidence from Bryant that each of Bell Atlantic's affiants were not competent to testify, we assume that they were. *See In re Apex Express Corp.*, 190 F.3d 624, 635 (4th Cir. 1999).

misses the mark, however, because *Reeves* specifically addressed the question "whether a plaintiff's prima facie case of discrimination . . . combined with sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision, is adequate to sustain a finding of liability for intentional discrimination." 530 U.S. at 140. *Reeves* did not alter or amend the plaintiff's prima facie case. Thus, because the district court held that Bryant failed to establish a prima facie case, a decision with which we agree, *Reeves* is irrelevant to Bryant's claims.

In sum, because Bryant is unable to demonstrate that Bell Atlantic treated similarly situated employees outside his class more favorably, we hold that Bryant fails to establish a prima facie case of discrimination. Accordingly, we affirm the district court's grant of summary judgment in favor of Bell Atlantic on Bryant's Title VII and Section 1981 claims.

## IV.  *CONCLUSION*

For the foregoing reasons, we affirm the decision of the district court dismissing Bryant's claims on summary judgment. Additionally, we deny the outstanding motion by Bell Atlantic to file a supplemental appendix because it is not relevant to our decision. For similar reasons, we deny Bryant's motion to strike and for sanctions.

*AFFIRMED*