Kim ALFORD, Plaintiff,

v.

WANG, INC., d/b/a Dunkin' Donuts and Chi Y. Wang, Defendants.

Civil Action No. 9:13–1166–SB–BHH.

United States District Court,
D. South Carolina,
Beaufort Division.

Signed March 31, 2014.

Elizabeth J. Palmer, Alice Fountain Paylor, Lorene Stuhr Dukes, Rosen Rosen and Hagood, Charleston, SC, for Plaintiff.

Amanda Coney Williams, McNair Law Firm, Charleston, SC, Melissa L. Azallion, McNair Law Firm, Hilton Head Island, SC, Richard J. Morgan, McNair Law Firm, Columbia, SC, for Defendants.

***ORDER***

SOL BLATT, JR., Senior District Judge.

This matter is before the Court upon the Plaintiff's complaint, which alleges that the Defendants discriminated and retaliated against her based on her sex and pregnancy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–17 and 42 U.S.C. § 1981. On June 18, 2013, the Defendants filed a motion to dismiss, or in the alternative, for summary judgment. The matter was referred to United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(g), D.S.C.

On November 25, 2013, the Magistrate Judge issued a report and recommendation ("R & R"), outlining the issues and recommending that the Court grant in part and deny in part the Defendants' motion to dismiss. Specifically, the Magistrate Judge recommended that the Court grant the motion as to the Plaintiff's Title VII claims against Defendant Chi Y. Wang[1] and as to any claims based on paragraphs 21, 22, and 23 of the complaint. Next, however, the Magistrate Judge recommended that the Court deny the motion in all other respects. Both sides filed timely written objections to the R & R, and the matter is ripe for review.

***STANDARDS OF REVIEW***

**I. The Magistrate Judge's R & R**

■ The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility for making the final determination remains with the Court. *Mathews v. Weber,* 423 U.S. 261, 269, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The Court reviews *de novo* those portions of the R & R to which a specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

**II. Rule 12(b)(6) Motion to Dismiss**

■ To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The court must accept all well-pleaded facts as true and construe these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the claim. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255–56 (4th Cir.2009). Legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pleaded facts for Rule 12(b)(6) purposes. *See id.* at 255. To survive a Rule 12(b)(6) motion, a complaint must give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v.*

---

1. Although the conclusion of the R & R recommends that the Court grant the Defendants' motion "as to any claims against Defendant Chi Y. Wang," this statement is slightly misleading because a review of the R & R indicates that the Magistrate Judge only recommended dismissal of the Plaintiffs Title VII claims asserted against Wang in his individual capacity. The Magistrate Judge did not recommend dismissal of the Plaintiffs defamation claim, which the Plaintiff asserts only against Defendant Wang.

*Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal quotation marks and citations omitted).

## BACKGROUND

According to her complaint, the Plaintiff began working for Defendant Wang, Inc., d/b/a Dunkin' Donuts ("Dunkin' Donuts") in February of 2010, on the morning shift. The Plaintiff claims that she was promoted to opening shift manager and received a salary increase. In or around March of 2011, however, the Plaintiff claims that she informed Defendant Chi Y. Wang ("Wang") that she was pregnant. The Plaintiff alleges that Wang is the "owner and operator" of Defendant Dunkin' Donuts and that he was her supervisor.

The Plaintiff states that she assumed the duties of assistant manager in April of 2011 when the former assistant manager, Jessica Shaw, was promoted to manager. According to the Plaintiff, when Wang informed her of her new salary, she pointed out that it was less than the hourly rate she received as a shift leader. The Plaintiff claims that Wang promised he would recalculate the Plaintiffs salary, but he never did, and so she was not compensated for her promotion and additional responsibilities.

The Plaintiff alleges that she single-handedly assumed the duties of manager on May 17, 2011, after Jessica Shaw stopped working for Dunkin' Donuts. According to the Plaintiff, she was not compensated for the assumed role. The Plaintiff alleges that she confronted Wang about this, but he responded that he could not place her in the management position because she was pregnant.

The Plaintiff claims that she became violently ill at approximately 4:30 a.m. on June 12, 2011, while at work, and that Wang did not provide her relief until noon, at which time she reported to the emergency room. The doctor instructed the Plaintiff to stay out of work on her next scheduled workday, June 16, and the Plaintiff states that she provided a copy of the doctor's note to the Defendants on June 14, 2011, prior to her absence.

The Plaintiff states that when she returned to work on June 17, 2011, another store employee told her to take the rest of the week off and to speak to Wang about her future work schedule in light of her pregnancy. Thereafter, according to the Plaintiff, Wang severely cut her hours and almost never scheduled her for Manager shifts. During this time, Wang promoted two individuals with less experience than the Plaintiff to the positions of Manager and Assistant Manager.

The Plaintiff filed a charge of discrimination with the EEOC on August 17, 2011,[2] and she gave birth on September 15, 2011. The Plaintiff alleges that when she

2. In the charge, the Plaintiff checked the box for discrimination based on sex, and she outlined the particulars of the case as follows:

    I. I began my employment with the above-named employer in February 2010 as a Drive Thru Order Taker. In July 2010, I was promoted to Shift Leader. On May 26, 2011, I was denied a promotion to Assistant Manager. Beginning on or around June 17, 2011, my work hours were reduced. On July 3, 2011, I was removed from Shift Manager duties,

    II. I was told by Chi Wang, Owner, that he was not going to promote me because of

my pregnancy. I was told by Mr. Wang that my work hours were reduced because of my pregnancy, and because I contacted an employee from the corporate office. No reason was given for removing me from Shift Manager duties.

    III. I believe that I have been discriminated against because of my sex (female due to pregnancy), in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Entry 8–1 at 2.)

returned from work after having her second child, Wang told other employees that she had been demoted because she was stealing from the store and because she was a racist.

In February of 2012, the Defendants were notified by the EEOC of the Plaintiff's charge of discrimination and the agency's investigation.

The Plaintiff claims that she informed the Defendants on March 26, 2012, that she was pregnant with her third child and that she expected to continue on her schedule as it was—the full-time morning shift. The Plaintiff also states that she told the Defendants that her expected due date was September 5, 2012, and that she requested a four-week maternity leave.

According to the Plaintiff, on April 2, 2012, another employee informed her that she was being suspended for two weeks due to an alleged customer complaint. The Plaintiff states that she never received a copy of the complaint or write-up from Wang, despite her request for copies. The Plaintiff believes that there was no complaint and that the suspension was in retaliation for her filing a claim with the EEOC and announcing her pregnancy. The Plaintiff terminated her employment with the Defendants as of April 15, 2012. The Plaintiff received a Notice of Right to Sue letter from the EEOC on January 31, 2013, following which she filed this action.

## DISCUSSION

### I. The Plaintiff's Title VII Claims

In their motion, the Defendants first contend that the Court lacks subject matter jurisdiction over the Plaintiffs Title VII claims because the Plaintiff did not check the "continuing action" box or the "retaliation" box on her EEOC charge and only checked the box for sex discrimination. In addition, the Defendants argue that the

EEOC charge alleged discrimination beginning at the earliest on May 26, 2011, and at the latest on July 3, 2011, while the complaint includes allegations covering March 2011 through April 2012.

In the R & R, the Magistrate Judge agreed with the Defendants that the scope of the Plaintiff's Charge of Discrimination limits the scope of subsequent litigation. Therefore, the Magistrate Judge considered whether the Plaintiff could bring a constructive discharge or retaliation claim in light of her EEOC charge. The Magistrate Judge first noted that no such thing as a constructive discharge claim exists; nevertheless, because the Plaintiff alleged other adverse employment actions in her EEOC charge, such as the failure to promote, the reduction of hours, and her removal as manager, the Magistrate Judge concluded that the Plaintiff could proceed with her sex discrimination claim. Next, with respect to the allegations in paragraphs 21, 22, and 23 of the Plaintiff's complaint, which concern events occurring after July of 2011 but before the Plaintiff filed her Charge in February of 2012, the Magistrate Judge agreed with the Defendants that such claims are technically unexhausted (because they were not part of the original Charge or any amended charge) and are therefore non-actionable. Nevertheless, the Magistrate Judge saw no reason to physically strike them from the complaint.

The Magistrate Judge also considered whether the Plaintiff could proceed with her retaliation claim in light of her failure to check the "retaliation" box on her EEOC charge. The Magistrate Judge determined that the Plaintiff was not obligated to have filed a separate charge regarding the alleged retaliation because the Plaintiff's claim stems from the "adverse employment actions against Plaintiff for filing a charge of discrimination with the

EEOC." (Compl. ¶ 37; Entry 14 at 6.) In support of her conclusion, the Magistrate Judge cites *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir.1992), where the Court of Appeals for the Fourth Circuit adopted the position that a plaintiff asserting a Title VII claim of retaliation based on the filing of a previous EEOC charge may raise the retaliation claim for the first time in federal court.

The Defendants object to this portion of the R & R, arguing that the allegations in the Plaintiff's complaint span a period of March of 2011 through April of 2012 and that they include a number of allegedly discriminatory and/or retaliatory acts that were not set forth in the Plaintiff's EEOC charge. The Defendants again ask that the Court strike paragraphs 21 through 23 and 25 through 27 of the Plaintiffs complaint, which pertain to alleged discriminatory acts that either the Plaintiff either had knowledge of prior to filing her charge or that relate to a subsequent pregnancy that was not part of the original EEOC charge.

As previously mentioned, the Magistrate Judge deemed paragraphs 21, 22, and 23 of the Plaintiff's complaint non-actionable because they address events that took place between October of 2011 and January of 2012; however, the Magistrate Judge did not recommend striking them from the complaint. In addition, the Magistrate Judge saw no reason to strike paragraphs 25 through 27 from the Plaintiffs complaint simply because they mention a third pregnancy, which was not part of the original EEOC charge.

■ After consideration, the Court agrees with the Magistrate Judge that paragraphs 21, 22, and 23 are non-actionable and that the Plaintiff may not seek recovery based on these allegations because they have not been administratively exhausted. With respect to the Defendants' objection that the Court must strike these paragraphs, the Court first notes that the Defendants did not file a motion to strike or otherwise request this drastic remedy in their actual motion.[3] In any event, the Court agrees with the Magistrate Judge that these paragraphs need not be stricken from the complaint. Although they are not *actionable,* they are not *necessarily* inadmissible, immaterial, or impertinent.

Next, however, the Court agrees with the Defendants that the Magistrate Judge was incorrect when she stated that "nowhere does [the Plaintiff] allege retaliation for her third pregnancy." (Entry 14 at 7.) Indeed, the Plaintiff does allege retaliation for her third pregnancy in paragraph 27 when she states "that the suspension was in retaliation for her filing a claim with the EEOC **and announcing her pregnancy,**" (Entry 1 ¶ 27 (emphasis added),) Nevertheless, as the Magistrate Judge noted, the Plaintiff has alleged that retaliatory conduct subsequent to the EEOC charge was on account of her having filed the charge, and "[t]o the extent the defendants can demonstrate that the alleged retaliatory conduct was taken for any other reason, whether non-discriminatory or unexhausted, *to wit,* an additional pregnancy, the defendant will certainly prevail." (Entry 14 at 7.) Thus, the Court agrees with the

---

**3.** Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings, Inc. v. Gilmore,* 252 F.3d 316, 347 (4th Cir.2001) (quoting 5A A. Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380, 647 (2d ed.1990)).

Magistrate Judge that any references to the Plaintiffs third pregnancy in paragraphs 25 through 27 would be non-actionable as unexhausted.[4] Again, however, the Court does not find it necessary to resort to the drastic remedy of striking these paragraphs, or the references.

■ Lastly, with respect to the Plaintiffs allegations of "constructive discharge," the Magistrate Judge found no such claim to exist. Based on that finding, the Defendants ask the Court to strike the references to constructive discharge from paragraphs 28 through 34 of the complaint. Here again, the Court agrees with the Magistrate Judge's finding that no such claim exists. Moreover, under the circumstances, the Court does not believe it is necessary to resort to the drastic remedy of striking these references.

## II. Defendant Wang's Individual Liability under Title VII

■ In the R & R, the Magistrate Judge agreed with the Defendants that Plaintiff improperly asserted Title VII claims against Defendant Wang in his individual capacity, based on *Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir.1998). The Plaintiff objects to this portion of the R & R and asserts that "both the federal statute and case law clearly allow a plaintiff to proceed against an individual employer for discrimination claims under Title VII." (Entry 18 at 2.)

Title VII provides, in relevant part: "It shall be an unlawful employment practice for an employer … to discriminate against any individual with respect to his … terms, conditions, or privileges of employment, because of such individual's …

sex." 42 U.S.C. § 2000e–2(a). It then defines employer as "a person engaged in an industry affecting commerce who has fifteen or more employees" and "any agent of such a person." *Id.* § 2000e(b). The statute does not define the term "agent." In *Lissau*, the Court of Appeals for the Fourth Circuit read Title VII's definition of "employer" the same way as the ADEA's definition of employer, noting that the court has rejected the claim of individual liability under the ADEA. 159 F.3d at 180. The court stated:

> We already have observed that Title VII is the ADEA's "closest statutory kin." *Birkbeck [v. Marvel Lighting Corp.]*, 30 F.3d [507] at 510 [ (4th Cir. 1994) ] (citations omitted). Thus, reading Title VII to foreclose individual liability represents the only logical extension of *Birkbeck*. Like the ADEA, Title VII exempts small employers; it would be incongruous to hold that Title VII does not apply to the owner of a five-person company but applies with full force to a person who supervises an identical number of employees in a larger company. *See id.* We interpret the inclusion of agent in Title VII's definition of employer simply to establish a limit on an employer's liability for its employees' actions. *See Birkbeck*, 30 F.3d at 510–11; *Miller v. Maxwell's Intl. Inc.*, 991 F.2d 583, 587 (9th Cir.1993).

*Id.* Ultimately, the court determined that "[t]o permit individual liability would improperly expand the remedial scheme crafted by Congress," and it reiterated "that supervisors are not liable in their individual capacities for Title VII violations." *id.* at 181.

4. Paragraph 25 states: "During February of 2012, Defendants were notified by the EEOC of Plaintiff's charge of discrimination and the agency's investigation." (Entry 1 ¶ 25.) The

Court cannot ascertain what this has to do with the Plaintiffs third pregnancy other than the fact that it came before the Plaintiffs March 2012 announcement.

As an initial matter, nowhere in the Plaintiff's complaint does she allege that Wang was her employer; rather, she refers to him as the "owner and operator of Defendant Dunkin' Donuts" as well as her "supervisor." (Entry 1 ¶¶ 3, 11.) Nevertheless, in her objections she asserts that Wang qualifies as her employer because he served in a supervisory position and exercised control over the terms and conditions of her employment. Ultimately, the Court is not persuaded by the Plaintiff's objection. In *Lissau*, the Fourth Circuit clearly rejected the notion of individual liability under Title VII. As the court stated: "Had Congress felt that individual liability was 'needed to deter unlawful harassment and intentional discrimination,' surely it would have included this remedy in the 1991 Amendments." 159 F.3d at 181 (citations omitted). Accordingly, the Court adopts the R & R's recommendation and grants the Defendants' motion as to the Plaintiff's Title VII claims asserted against Defendant Wang in his individual capacity.

### III. The Plaintiff's Defamation Claim

■ The Plaintiff alleges that Defendant Wang defamed her by falsely accusing her of embezzlement and publishing this falsity to other employees. In the R & R, the Magistrate Judge found the allegations of the Plaintiffs complaint sufficient to state a claim for defamation. The Defendants object to this finding and assert that the Plaintiff has pleaded nothing more than bare allegations without sufficient facts.

After review, the Court finds the Defendant's objection to be without merit. As the Magistrate Judge noted, the Plaintiff has made more than a formulaic recitation of the elements of a defamation claim. The Plaintiff has alleged specific defamatory statement made to Dunkin' Donuts employees, and discovery will permit the

Plaintiff to specifically identify those individuals by name. The Court denies the Defendants' motion to dismiss the Plaintiff's defamation claim.

### *CONCLUSION*

Based on the foregoing, it is hereby

**ORDERED** that the Magistrate Judge's R & R (Entry 14) is adopted, and the Defendants' motion (Entry 7) is granted in part and denied in part. Specifically, the Court grants the motion as to the Plaintiff's Title VII claims asserted against Defendant Wang in his individual capacity. The Court also grants the motion insofar as it finds that paragraphs 21, 22, and 23 of the complaint are non-actionable; that any references to the Plaintiff's third pregnancy are non-actionable; and that no constructive discharge claim exists. Finally, the Court denies the motion with respect to the Plaintiff's defamation claim.

**IT IS SO ORDERED.**

### *REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE*

BRUCE H. HENDRICKS, United States Magistrate Judge.

This matter is before the Court on the defendants' partial motion to dismiss [Docs. 7, 8], pursuant to Federal Rules of Civil Procedure 12(b)(6). The plaintiff alleges that she was discriminated and retaliated against because of her sex and pregnancy in violation of Title VII of the Civil Rights Act of 1964. The plaintiff also alleged a state law claim for defamation.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment cases are referred to a United States Magistrate Judge for consideration.

## FACTUAL BACKGROUND

The plaintiff asserts she began working at Dunkin' Donuts in February of 2010 as a drive-through order taker and was later promoted to opening shift manager. (Compl. ¶¶ 8, 10.) Around March 2011, the plaintiff informed Defendant Chi Y. Wang that she was pregnant. (Compl. ¶ 12.) In April 2011, the plaintiff asserts that she "assumed the duties of Assistant Manager" and that, in May 2011, she "assumed all duties of the morning Manager," but was not compensated for these assumed roles. (Compl. ¶¶ 13, 14.) The plaintiff contends that Defendant Wang told her he could not place her in the management position because she was pregnant. (Compl. ¶ 15.) In June 2011, the plaintiff alleges her hours were severely cut and two other individuals were promoted to the positions of manager and assistant manager. (Compl. ¶ 17, 18.)

The plaintiff contends that she filed a charge of discrimination with the Equal Employment Opportunity Commission, on August 17, 2011, although in actuality it appears that she submitted an intake questionnaire at that time. (Compl. ¶ 19.) The plaintiff gave birth to her child, in September 2011, and sought the assistance of an attorney to return to her position at Dunkin' Donuts, in October 2011, at which time the plaintiff asserts she was demoted to a cashier. (Compl. ¶¶ 20, 21.) The plaintiff further alleges that Defendant Wang told other employees that she was demoted because she was stealing from the store and she was a racist. (Compl. ¶ 24.)

In February 2012, the defendants were notified of the plaintiff's charge of discrimination and the agency's investigation. (Compl. ¶ 25.) Approximately a week after announcing she was pregnant again, the plaintiff claims she was suspended for two weeks because of an alleged customer complaint. (Compl. ¶ 27.) Due to these allegedly intolerable working conditions during March 2011 and continuing through April 2012, the plaintiff asserts she was forced to quit her job. (Compl. ¶ 28.)

The plaintiff, thereafter, requested a Notice of Right to Sue letter from the EEOC, thereby effectively terminating the EEOC's investigation and processing of her charge. The EEOC issued the Right to Sue letter on January 31, 2013. (Compl. ¶ 5.)

## APPLICABLE LAW

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993) (citations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " " *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Stated differently, "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed.R.Civ.P. 8(a)).

## DISCUSSION

### I. Title VII Claims

The defendants first contend that the plaintiff's Title VII claims for retaliation and constructive discharge should be dismissed or substantially limited. Specifically, the defendants argue that the plaintiff failed to administratively exhaust any such claims before the Equal Employment Opportunity Commission.

Prerequisite to bringing a judicial action, it is well-understood that a plaintiff in South Carolina must file a charge of discrimination within 180 days (for claims arising under South Carolina Human Affairs Law) or 300 days (for claims arising under Title VII, since South Carolina is a deferral state) after the alleged unlawful employment practice occurred. *See* 42 U.S.C. § 2000e–5; S.C.Code § 1–13–90; *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir.2009); *Davis v. North Carolina Dep't of Corr.*, 48 F.3d 134, 138–40 (4th Cir.1995).

█ As the defendants emphasize, the scope of a Charge of Discrimination limits the scope of any subsequent litigation; claims not included in the charge of discrimination are barred from judicial review. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 509, 513 (4th Cir.2005); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 963–64 (4th Cir.1996) ("Only those discrimina-

tion claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit."); *see also Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir.2002).

The plaintiff's Charge of Discrimination was filed February 10, 2012. [Doc. 8–1.] On it, she checked a single box for the basis of her Charge: sex. *Id.* She did not check the "retaliation" box. The plaintiff indicated that the "earliest" date of discrimination was May 26, 2011, and that the "latest" date was July 3, 2011. *Id.* The "Particulars" of the Charge allege that between May 26 and July 3, 2011, she was denied a promotion, her hours were reduced, and she was removed as store manager. *Id.* She contends that she was told by the owner of the store that she had lost hours and been denied the promotion due to her pregnancy and because she had contacted an employee from the defendant's corporate office. *Id.* Those allegations define the permissible scope of this lawsuit. Accordingly, the question is whether a constructive discharge or retaliation claim can now be brought pursuant to Title VII. The Court would start with the former.

### A. Constructive Discharge

The plaintiff has not pled a constructive discharge claim and, respectfully, no such thing exists.[1] She has pled a discrimina-

---

1. It is the undersigned's view and experience that the constructive discharge concept is the legal fiction by which wrongful termination claims are salvaged where no actual termination or other adverse employment action has, in fact, occurred. In other words, constructive discharge is an element of a structurally larger claim, *to wit*, Title VII, Section 1983, the South Carolina Whistleblower Act, as opposed to some legal end unto itself.

Case law would seem to bear this out. *See, e.g., Honor v. Booz—Allen & Hamilton, Inc.*, 383 F.3d 180, 186 (4th Cir.2004) (discussing constructive discharge in the context of wrongful termination, Title VII, and Section 1981 claims); *Goldsmith v. Mayor & City Council of Baltimore*, 987 F.2d 1064, 1072 (4th Cir.1993) (discussing constructive discharge in the context of a state law claim for

tion claim based on her sex and pregnancy pursuant to Title VII, in a way wholly consistent with her Charge of Discrimination. (Compare Compl. ¶¶ 33–35 with [Doc. 8–1].) In the cause-specific paragraphs of the Complaint, the plaintiff incorporates, by reference, prior averments alleging, identically to the Charge, the failure to promote, reduction in hours, and removal as store manager. (See Compl. ¶¶ 14–18, 36–37.) She has pled a sex/pregnancy discrimination claim and it is exhausted. The fact that the plaintiff includes the statement, "[a]ll such acts led to Plaintiff's constructive discharge from Defendant's employment," does not convert the plaintiff's claim into something altogether different. She has alleged other possible adverse employment actions, including the denial of promotion *et al.*, which if established may support her discrimination claim. (See Compl. ¶¶ 14–18.)

The defendants seem to contend that the plaintiff has also included in her claim for discrimination, different than her Charge, some significant amount of new allegation pertaining to the time frame prior to July 3. The Court does not see it. As is typical, the plaintiff has certainly given some longitudinal history of her employ with the defendants and, the Complaint is more specific in necessary detail, but the events alleged, for the better part, are identical. There are a few allegations concerning write-ups given to the plaintiff after July 3, 2011, but before her Charge was filed in February 2012. (Compl. ¶¶ 21, 22, 23.) Because those were not a part of the original Charge and cannot be considered retaliation for the filing of the same (as the defendant was unaware of the Charge at the time of the write-ups (see Compl.

¶ 25)), they are technically unexhausted. As the defendants contend, the Fourth Circuit Court of Appeals has instructed that when a person alleging discrimination determines they have additional bases for recovery, that their initial charge does not include, their recourse is to file an amended charge with the EEOC. *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir.2013).

They need not be stricken but it is recommended that Paragraphs 21, 22, and 23 be deemed inactionable. That does not necessarily make them inadmissible or improvident, somehow.

## B. Retaliation

■ The plaintiff concedes that she did not Charge or otherwise exhaust any retaliation claim but argues that under Fourth Circuit law she was not required to do so. It is true that the rule of law in the Fourth Circuit is "that a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge." *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir.1992). The Fourth Circuit explained, in *Nealon*, that such a view was the "inevitable corollary" of the rule that "the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." *Id.* Indeed, this precedent has been affirmed more recently by the Fourth Circuit, even in light of the United States Supreme Court's decision, in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). *See Jones v. Calvert*

---

intentional interference with contract and prospective advantage).

Indeed, the plaintiff has used the constructive discharge concept in precisely this way

and has not, as the defendant contends, pled some claim for it. (See Compl. ¶ 34.)

*Group, Ltd.*, 551 F.3d 297, 301 (4th Cir. 2009).

The plaintiff's present claim for retaliation is expressly predicated on the defendant having taken "adverse employment actions against Plaintiff for filing a charge of discrimination with the EEOC." (Compl. ¶ 37.) Accordingly, it was "related to allegations contained in the charge" and the plaintiff was not obligated to have separately filed a charge concerning such alleged retaliation. *See Jones*, 551 F.3d at 301.

The defendants contend that the plaintiff alleges a number of retaliatory acts in her Complaint, which arose *prior* to the filing of her Charge in February 2012 and, which should not enjoy the shield of the *Nealon* rule, *see Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147 (4th Cir.1999). (Reply at 2–3.) But, the Court does not see it. The acts alleged prior to February 2012 are all discrete incidents of discrimination, either properly exhausted by the Charge or not, as previously discussed. Rather, the retaliation claim is specifically and only premised on the filing of the Charge, admittedly unknown to the defendant prior to February 2012. (Compl. ¶ 25, 37.) So the defendants' attempt to recharacterize certain pre-February 2012 averments as retaliatory, does not defeat the plaintiff's clear intent in the claim—that the retaliation claim be based on retaliatory events *subsequent* to the February 2012 charge. In other words, the plaintiff's "failure to include numerous retaliatory claims of which she was aware at the time her January 2012 EEOC charge" (Def. Reply at 4) is not any kind of meaningful objection. Those are not the bases of her retaliation claim.

Lastly, the defendants allege that the retaliatory acts alleged, subsequent to the February Charge, are of a new kind. Specifically, the defendant argues that the plaintiff has asserted a whole new incident of sex discrimination and retaliation based on a third pregnancy, in March 2012, which cannot be viewed as reasonably related to the substance of the original Charge for purposes of the *Nealon* rule. (See Compl. ¶ 26.)

But, again, the defendants have parsed too thinly. The plaintiff indeed mentions a third pregnancy. *See id.* But, as discussed, the plaintiff alleges that the retaliation was on account of her *having filed the February Charge* and nowhere does she allege retaliation for the third pregnancy. To the extent the defendants can demonstrate that the alleged retaliatory conduct was taken for any other reason, whether non-discriminatory or unexhausted, *to wit*, an additional pregnancy, the defendant will certainly prevail. But, at this time, the plaintiff has alleged that all retaliatory conduct subsequent to the February 2012 charge was on account of her having filed the Charge. That is permissible, notwithstanding a failure to exhaust it. *See Jones*, 551 F.3d at 301.

## II. Individual Liability

The defendants next contend that the plaintiff has improperly asserted claims against Defendant Chi Y. Wang in his individual capacity. As the defendants argue, Title VII limits liability for Title VII claims to the employer. Title VII provides, in part, that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his ... terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a). The Fourth Circuit has interpreted the word "individual" to mean the company employer and has concluded that "supervisors are not liable in their individual capacities for Title VII violations." *Lissau v. Southern Food Service,*

*Inc.,* 159 F.3d 177, 180 (4th Cir.1998). The court reasoned in *Lissau* that the only reasonable interpretation of Title VII is "to foreclose individual liability" because Title VII exempts small employers and "it would be incongruous to hold Title VII does not apply to the owner of a five-person company but applies with full force to a person who supervises an identical number of employees in a larger company." *Id.*

The plaintiff responds that Defendant Wang is a business owner and not a supervisor or employee. The Complaint alleges that Defendant Wang is the owner of Defendant Wang, Inc. It is not stated whether he is an individual owner of a Dunkin' Donuts or a franchisee.

But, even where an individual is effectively the alter ego of a closely held company or corporation, the circuit courts of appeals, which have considered it, all reject that any individual liability is exists. *See Dearth v. Collins,* 441 F.3d 931 (11th Cir.2006); *Worth v. Tyer,* 276 F.3d 249, 262 (7th Cir.2001) (rejecting alter ego theory of individual capacity liability in Title VII lawsuit against the president of a company and citing *EEOC v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1282 n. 11 (7th Cir.1995)). This has been deemed true even if "a sole shareholder abused the corporate form and the corporate veil were pierced." *AIC Security,* 55 F.3d at 1282 n. 11 (concluding in *dicta* ).

Even if somehow the opinion of other circuit courts of appeals was ignored, however, the plaintiff has not alleged the corporate form at issue in this case or the circumstances existing which would allow it to be disregarded.

The Court would recommend that all claims against Defendant Wang, in his individual capacity, should be dismissed.

### III. Defamation

■ Finally, the defendants contend that the plaintiff's defamation claim has not been properly pled. Under South Carolina law, a claim for defamation requires proof of the following elements: (1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Argoe v. Three Rivers Behavioral Health, LLC,* 392 S.C. 462, 710 S.E.2d 67, 74 (2011).

The plaintiff alleges that "Wang told several other employees that Plaintiff had been demoted because she was stealing from the store and that she was a racist." (Compl. ¶ 24.) The plaintiff also asserts that "Defendant Wang falsely accused Plaintiff of the crime of embezzlement" and "maliciously published this falsity by communicating it to persons other than the Plaintiff." (Compl. ¶¶ 42, 42.)

The defendants contend that the plaintiff has not sufficiently alleged the individuals to whom the defamatory statements were published. *See Campbell v. International Paper Company,* 2013 WL 1874850, at *3 (D.S.C. May 3, 2013). This case is not the same as *Campbell.* Here, the plaintiff has made more than a "formulaic" recitation that defamatory statements were made "publicly known." *Id.* The plaintiff has expressly identified "employees" of the defendant. It is not impermissible that names are unknown. That is what discovery affords. The plaintiff has not made a blanketed accusation that a publication was simply somewhere made. Instead, she has identified employees of the defendant, a finite number of identifiable individuals relevant to this case. If she cannot ultimately prove them, so be it.

The claim should not be dismissed.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is RECOMMENDED that the defendants' motion to dismiss [Docs. 7, 8] should be GRANTED in part and DENIED in part. Specifically, the motion should be GRANTED as to any claims against Defendant Chi Y. Wang, which should be dismissed *with prejudice*. The motion should also be GRANTED with respect to any claims based on Paragraphs 21, 22, and 23 of the Complaint. The motion, however, should be DENIED in all other respects.

Signed Nov. 25, 2013.